UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
JAMES LOMBARDI and                     )
JOSHUA DAVIS,                          )
                                       )
        Plaintiffs,                    )
                                       )
        v.                             )   C.A. No. 19-364 WES
                                       )
DANIEL MCKEE, in his official          )
capacity as Governor of the            )
State of Rhode Island,                 )
                                       )
        Defendant.                     )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

        Before the Court is a Motion to Dismiss, ECF No. 7, filed by
the Governor[1] of the State of Rhode Island ("State").  For the
reasons explained herein, the State's Motion is GRANTED in part,
and DENIED in part.

I.   INTRODUCTION

        This action centers around the interpretation and application
of R.I. Gen. Laws § 13-6-1, the so-called "Civil Death Act."
Plaintiffs, two individuals sentenced to life without parole at
the Rhode Island Adult Correctional Institutions ("ACI"), seek a
declaratory judgment that the Civil Death Act violates the First,

_____
        [1] Daniel J. McKee is now the Governor of Rhode Island.
Pursuant to Fed. R. Civ. P. 25(d), Governor Daniel J. McKee has
been substituted for Governor Gina M. Raimondo as Defendant.

Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and unconstitutionally restricts Plaintiffs' right to seek redress via 42 U.S.C. § 1983.  See Am. Compl. 1-2, 8-9, ECF No. 17.  The State moves to dismiss Plaintiffs' Amended Complaint for lack of standing and failure to state a claim.  See Def.'s Mot. to Dismiss 1.  In the alternative, the State asks this Court to abstain from ruling, at least until the Rhode Island Supreme Court ("RISC") rules in two cases pending there (both of which are discussed below).  Id.; Mem. Supp. Mot. to Dismiss 37-40, ECF No. 7-1.  A hearing on the Motion to Dismiss was held on February 24, 2020.  After the hearing, Plaintiffs filed an Amended Complaint containing additional details regarding the underlying claim that Plaintiff Davis wishes to bring in state court.  See Am. Compl. ¶ 28.  As the State noted at the February 2020 hearing, the fundamental questions at issue here remain the same even after the Amended Complaint's filing.  See Feb. 24, 2020 Hr'g Tr. 38.

II.  BACKGROUND

Plaintiffs James Lombardi and Joshua Davis are inmates at the ACI sentenced to life in prison without parole.[2]  Am. Compl. ¶¶ 6-7.  According to the Amended Complaint, while in his cell on September 10, 2018, Plaintiff Lombardi injured himself on the sharp

---

[2] According to the State, Plaintiff Lombardi was convicted of first-degree murder; Plaintiff Davis was convicted of first-degree murder, first-degree child molestation, and kidnapping.  Mem. Supp. Mot. to Dismiss 1-2.

edge of a footlocker, "causing pain and resulting in permanent disfigurement, i.e. a 3/4-inch scar." Id. ¶ 9. Plaintiff Lombardi alleges that the Rhode Island Department of Corrections ("RIDOC") knew about this hazard, but failed to warn him or mitigate the danger it posed. Id. ¶ 14. Plaintiff Davis alleges that the RIDOC nursing staff administered contaminated insulin to him, constituting negligence, medical malpractice, battery, and cruel and unusual punishment. Id. ¶¶ 18-22. Plaintiffs both allege they have suffered damages from physical injury, as well as pain and suffering because of these incidents. Id. ¶¶ 23-24.

The crux of Plaintiffs' claim here is that the Civil Death Act unconstitutionally prevents them from bringing lawsuits against the State of Rhode Island to recover damages for tortious conduct. Id. ¶¶ 30-37. They allege that but for the Civil Death Act, both would pursue negligence claims in Rhode Island state court, and Plaintiff Davis would also pursue a § 1983 claim for violation of the Eighth Amendment. Am. Compl. ¶¶ 27-28. Plaintiffs allege that the Civil Death Act denies them rights protected by the Due Process and Equal Protection Clauses, the right to be free from cruel and unusual punishment under the Eighth Amendment, and basic civil, statutory, and common law rights protected by the First, Fifth, and Seventh Amendments and 42 U.S.C. § 1983. Id. ¶¶ 34-37. Plaintiffs pray that this Court: (1) declare the Civil Death Act unconstitutional; (2) issue a permanent

injunction barring enforcement of the Act; and (3) award attorney's fees pursuant to 42 U.S.C. § 1988.  Id. at 8-9.

Rhode Island's 110-plus years' old Civil Death Act provides in full:

> Every person imprisoned in the adult correctional institutions for life shall, with respect to all rights of property, to the bond of matrimony and to all civil rights and relations of any nature whatsoever, be deemed to be dead in all respects, as if his or her natural death had taken place at the time of conviction. However, the bond of matrimony shall not be dissolved, nor shall the rights to property or other rights of the husband or wife of the imprisoned person be terminated or impaired, except on the entry of a lawfully obtained decree for divorce.

R.I. Gen. Laws § 13-6-1.  While once quite commonplace, only Rhode Island, New York, and the Virgin Islands still have civil death statutes.  See Gallop v. Adult Correctional Institutions, 182 A.3d 1137, 1141 (R.I. 2018) ("Gallop I"); see also Gabriel J. Chin, The New Civil Death: Rethinking Punishment in the Era of Mass Conviction, 160 U. Pa. L. Rev. 1789, 1794-98 (2012).  The Rhode Island statute has been the subject of considerable litigation in recent years, and there have been several recent decisions of the RISC and Superior Court interpreting the law.[3]

The leading case, Gallop I, involved an inmate's attempt to sue the state and correctional officers over alleged injuries he

---

[3] The RISC interpreted the Civil Death Act for the first time in Bogosian v. Vaccaro, 422 A.2d 1253 (R.I. 1980).  In that case, the defendant attempted to use the Civil Death Act as a shield to prevent liability under a contract, which argument the RISC

suffered in an assault by another inmate, made possible because a correctional officer abandoned his post for a period of time.  182 A.3d at 1139.  Ruling against inmate Gallop, the RISC stated that the Civil Death Act "unambiguously declares that a person such as plaintiff, who is serving a life sentence, is deemed civilly dead and thus does not possess most commonly recognized civil rights."  Id. at 1141.  Furthermore, the Court observed that "[t]he Legislature has enumerated certain exceptions [to the statute] . . . but there is no exception for claims impacting a prisoner's civil rights."  Id.  Thus, the Court held the Superior Court was without authority to hear the case "because plaintiff's civil rights were extinguished by operation of law once his conviction became final."  Id.

In his appeal, the plaintiff also argued that the trial justice erred by not allowing him to amend his complaint on the eve of trial to bring a § 1983 claim.  Id. at 1143-45.  The RISC remanded this claim, finding that the trial justice had not ruled on the plaintiff's motion.  Id. at 1144-45.  In dicta, however, the RISC noted that "plaintiff has failed to produce any authority that holds that a state court is bound to hear a § 1983 action

_____

rejected.  Bogosian, 422 A.2d at 1253-54.  The RISC noted that the roots of civil death stem from ancient Greece, where criminals were stripped of "civil rights, including the right to appear in court, vote, make speeches, attend assemblies, and serve in the army."  Id. at 1254 n.1.

where this Court has deemed the party to be civilly dead." Id. at 1144.

On remand, the trial justice predictably denied the plaintiff's motion to amend on the basis of timeliness and undue prejudice. Gallop v. Adult Correctional Institutions, 218 A.3d 543, 547 (R.I. 2019) ("Gallop II"). Gallop then appealed that denial to the RISC, arguing, inter alia, that the trial justice erred in failing to address his argument that the Civil Death Act violates the Supremacy Clause of the United States Constitution. Id. The RISC affirmed the decision of the trial justice and refrained from taking up the merits of the plaintiff's constitutional challenge. Id. at 550-51.

The RISC next interpreted the Civil Death Act in the context of marriage. In Zab v. Zab, 203 A.3d 1175 (R.I. 2019) ("Zab I"), the court affirmed a Family Court order denying inmate Zab's motion to expunge his marriage record, finding that, pursuant to the Civil Death Act, he had no "legal capacity to seek relief in the Family Court." Id. at 1176. The RISC commented that "the appeal from the Family Court also is not properly before us, because plaintiff is civilly dead and therefore he has no right to litigate this issue." Id.[4]

---

[4] In this Court, Judge Lisi in Ferreira v. Wall upheld the constitutionality of the restriction against marriage in the Civil Death Act. No. 15-219-ML, 2016 WL 8235110, at *5 (D.R.I. Oct. 26, 2016).

The Civil Death Act has also been the subject of two recent rulings by Rhode Island Superior Court.  In the first, inmate Zab brought a claim for negligence and a § 1983 action claiming the Civil Death Act constituted cruel and unusual punishment in violation of the Eighth Amendment.  <u>See</u> Compl. at ¶¶ 14-23, <u>Zab v. R.I. Dept. of Corr.</u> ("<u>Zab II</u>"), Case No. PM-2017-4195 (R.I. Super. Ct. Sept. 6, 2017).  The State asserted the Civil Death Act as an affirmative defense to Zab's negligence claims only and attacked the merits of his Eighth Amendment claim.  <u>See</u> Def.'s Mot. for Summ. J. at 1-2, <u>Zab II</u>, Case No. PM-2017-4195 (R.I. Super. Ct. June 24, 2019).  Zab, in turn, argued that the Civil Death Act is unconstitutional, and could not be asserted as a valid defense. <u>See</u> Pl.'s Mem. Supp. Mot. for Summ. J. at 2, <u>Zab II</u>, Case No. PM-2017-4195 (R.I. Super. Ct. June 3, 2019).  The second case, <u>Rivera v. R.I. Dept. of Corr.</u>, similarly involved a negligence claim. Again, the State asserted as a defense that the Civil Death Act barred the claim.  Aug. 21, 2019 Hr'g Tr. 44, Case No. PM-2017-4195 (ECF No. 10-2 in this case).  The Trial Justice held that the Civil Death Act barred both plaintiffs' negligence claims.  <u>Id.</u> at 39-44.  Ruling from the bench, Justice Lanphear concluded, based on the RISC's holding in <u>Gallop I</u>, that he neither had the authority to hear the claims nor the authority to address the constitutional challenge to the use of the Act as a ban,

notwithstanding his "concern[s]."[5]  Id.  As to Zab's § 1983 claim

for Eighth Amendment violations, Justice Lanphear found that Zab

had not sued "a person" as required by the statute.  Id. at 40.

Both Plaintiffs have appealed the decisions to the RISC, where the

cases remain pending as of the time of this writing.

III. LEGAL STANDARD

      The State moves to dismiss the Amended Complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure, claiming various

procedural and substantive inadequacies.  See generally Mot. to

Dismiss.  A motion to dismiss under Rule 12(b)(6) requires the

Court to view the facts contained in the pleadings in the light

most favorable to the non-moving party and draw all reasonable

inferences in that party's favor.  See Perez-Acevedo v. Rivero-

Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  To survive the motion,

however, a plaintiff must present "factual allegations that 'raise

a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true.'"  Id. (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "While

detailed  factual  allegations  are  not  required,  'a  formulaic

recitation  of  the  elements  of  a  cause  of  action'  is  not

---

[5] Justice Lanphear consolidated Zab v. R.I. Dept. of Corr.,
Case No. PM-2017-4195, and Rivera v. R.I. Dept. of Corr., Case No.
2017-433, at the August 21, 2019, hearing for the purpose of
hearing the motions pending in each case regarding the application
of the Civil Death Act.  Aug. 21, 2019 Hr'g Tr. 3, Case No. PM-
2017-4195.

sufficient." DeLucca v. Nat'l Educ. Ass'n of Rhode Island, 102 F. Supp. 3d 408, 411 (D.R.I. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  On a Rule 12(b)(6) motion, the court is "laser-focused on the legal adequacy of the complaint," not the ultimate right to relief.  Pimental v. Wells Fargo Bank, N.A., C.A. No. 14-494S, 2015 WL 5243325, *4 (D.R.I. 2015) (citations omitted).

To adequately plead a claim under 42 U.S.C. § 1983, "a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000) (citation omitted).  The "act" in question here is the potential use of the Civil Death Act to block Plaintiffs' injury claims, should they choose to bring suits pertaining to those injuries in either state or federal court.

IV.  DISCUSSION

A.  Standing

To satisfy Article III standing requirements, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  The injury

must be "concrete and particularized", "actual or imminent", and not speculative.  Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (citations omitted).

The State argues that Plaintiffs' injuries are speculative and lack standing for two basic reasons.  First, Plaintiffs have not brought their various claims (and legal theories) in state court.  Rather, Plaintiffs want this Court to anticipate that if they did so, the State would assert the Civil Death Act as a defense, and the state court would conclude it was in excess of its jurisdiction to consider Plaintiffs' claims.  The State contends that Plaintiffs need to bring the actions in state court first and see how they fare.  See Mem. Supp. Mot. to Dismiss 10-16.  Second, the State argues that Plaintiffs' Amended Complaint sweeps too broadly, seeking redress for constitutional harms completely unrelated to the gravamen of their negligence claims. See id. at 16-17.

In broad strokes, Plaintiffs contend that they should not be required to file an action in state court only to have it rejected before seeking redress in this Court.  Pls.' Obj. to Mot. to Dismiss ("Pls.' Obj.") 12, ECF No. 10.  Rather, Plaintiffs say that the Rhode Island courts have been clear that "they have no power to adjudicate the Plaintiffs' claims because once [Plaintiffs] are determined to be prisoners sentenced to life at the ACI, the Court acts in excess of its jurisdiction in making

any other determination." Id.  According to Plaintiffs, that the State will imminently use this unconstitutional statute as a shield unlocks the gate to federal court and entitles them to an order declaring the statute unconstitutional.  Id. at 12-14.

The basic question here is whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).  "While a declaratory judgment should not be granted in speculative situations, . . . a litigant does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending that is enough." Id. (quotations and citations omitted).  Courts determine whether the controversy "admits of specific relief through a decree of conclusive character" and "whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Id. (quotations and citations omitted).

The Court agrees with Plaintiffs that the language of the Civil Death Act, and the clear holdings and dicta of the RISC and state court trial justices, renders all of their underlying claims futile if brought in state court.  Even without a history of past

application of the statute in the precise context of the claims here, the threat of the statute's use as a shield is nonetheless obvious and sufficient, and declaring the statute unconstitutional would set the controversy here to rest.

The State is half right when it asserts the Civil Death Act has never been interpreted by Rhode Island courts to preclude a civilly dead inmate from pursuing a federal claim in state court, nor to bar negligence claims in state court.  The RISC held in Gallop I that "the Legislature has unambiguously mandated that persons serving a life sentence are prohibited from asserting civil actions."  182 A.3d at 1143 (emphasis added).  While it is true that the RISC did not state explicitly that the Act bars federal claims in state court, neither did it qualify its broad statement in any way suggesting a carve-out for federal claims.  Moreover, the court commented in dicta that "plaintiff ha[d] failed to produce any authority that holds that a state court is bound to hear a § 1983 action where [the RISC] has deemed the party to be civilly dead."  Id. at 1144.  This strongly suggests that the RISC contemplated the inclusion of federal claims within the Civil Death Act's purview and declined to carve out an exception.  It is not unreasonable then to conclude, as Plaintiffs suggest, that the Rhode Island courts have effectively interpreted the Civil Death Act to preclude a civilly dead inmate from pursuing federal claims in state court.  "[A] constitutional question . . . must be

presented in the context of a specific live grievance[.]" <u>Golden</u> <u>v. Zwickler</u>, 394 U.S. 103, 110 (1969).   Plaintiffs have sufficiently alleged facts that demonstrate that each of them has a live constitutional grievance.

The State also contends that Plaintiffs lack standing in federal court with respect to their underlying negligence claims because they have not attempted to pursue these claims in state court.  Moreover, the State highlights that the constitutionality of the Civil Death Act as a bar to such claims is currently pending before the RISC.  Def.'s Reply 12, ECF No. 11.  The State says "prudential considerations militate against" the federal court providing injunctive relief because if the RISC determines this application is unconstitutional, Plaintiffs will be free to move forward with their claim in state court.  <u>Id.</u>  The State seems to suggest that Plaintiffs should bring their claims in state court and await a decision from the RISC on the constitutional challenge posed in <u>Zab II</u> and <u>Rivera</u>, discussed above.  Only then, if an unfavorable decision is forthcoming, would they be poised to go forward.  Plaintiffs naturally retort that nothing requires them to present their federal constitutional challenges to the state court in the first instance, and moreover, the State should not

get to dictate the Plaintiffs' litigation strategy. Pls.' Obj. 13.

While this Court takes matters of comity and prudential abstention seriously,[6] there is no compelling reason to push the Plaintiffs into the box the State wants them in – forcing them to bring their claims in state court. Plaintiffs have brought a federal claim in federal court, as is their right; and the RISC has expressly held that the Rhode Island state courts do not have the authority to hear civil actions brought by plaintiffs who have been sentenced to life without parole at the ACI. See Gallop I, 182 A.3d at 1141. There is simply no doubt that Plaintiffs' negligence claims would be unsuccessful in state court because of the Civil Death Act; that application of this statute is the unconstitutional deprivation of which they complain. Plaintiffs face the very real threatened harm of having their civil negligence claims barred by the application of an arguably unconstitutional statute. As such, Plaintiffs' claims are sufficient to establish standing in this federal forum.

The State's second objection relates to Plaintiffs' standing to assert a broad assortment of other constitutional violations

---

[6] See Rhode Island v. Chevron Corp., 393 F. Supp. 3d 142, 152 (D.R.I. 2019) (granting the State of Rhode Island's Motion to Remand to state court due to lack of federal jurisdiction), aff'd Rhode Island v. Shell Oil Products Co., L.L.C., 979 F.3d 50 (1st Cir. 2020).

unrelated to the incidents giving rise to Plaintiffs' negligence claims, for example, the right to make contracts, own property, or other basic rights afforded by the Constitution.  Mem. Supp. Mot. to Dismiss 16.  This argument fares much better because the Amended Complaint does not contain allegations specific to Plaintiffs that demonstrate a potential harm to these rights.  Although Plaintiffs have alleged generally that the Civil Death Act purports to take away <u>all</u> civil rights, including the right to make contracts or own property, they have not pled any specific facts related to these rights.  The only facts they have pled pertain to Plaintiff Lombardi's injury to his foot and the administration of contaminated insulin to Plaintiff Davis.  Am. Compl. ¶¶ 9-24. There is no "live grievance" involving these other rights, and therefore Plaintiffs lack standing to assert them here.  <u>See</u> <u>Golden</u>, 394 U.S. at 110.

B.   Failure to State a Claim

Turning to the substance of the Amended Complaint, the State argues that Plaintiffs' claims fail as a matter of law because legislative enactments are presumed constitutional, and more specifically, that the Civil Death Act — as an additional sanction for those convicted of the most serious crimes — falls within a state's authority to determine punishment.  Mem. Supp. Mot. to Dismiss 17, 19-20.  In its effort to pick them off one by one, the

State marches through each constitutional claim detailing the reasons for its failure.  The Court will take each in turn.

1.   The Fifth and Seventh Amendments

To begin with the low hanging fruit, the State points out that the Amended Complaint is devoid of any allegation demonstrating how the Civil Death Act violates the Fifth or Seventh Amendments.  Mem. Supp. Mot. to Dismiss 20.  While it is true that Plaintiffs did not separate out their Fifth and Seventh Amendment claims in the Amended Complaint, it is obvious that the right to a jury trial is intertwined with their arguments under the Due Process and Equal Protection clauses and is part and parcel of Plaintiffs' claims in state court.  See Am. Compl. ¶¶ 27-28. Because the Amended Complaint alleges that the Civil Death Act infringes on Plaintiffs' fundamental right of access to the courts, see id. ¶¶ 27-28, 37, the State's Motion to Dismiss with respect to Plaintiffs' claims under the Fifth and Seventh Amendments is DENIED.

2.   The Eighth Amendment

Plaintiffs allege that the Civil Death Act "imposes an excessive and outmoded punishment contrary to evolving standards of decency."  Am. Compl. ¶ 36.  Plaintiffs contend that the Civil Death Act is cruel and unusual punishment because it boundlessly takes away "each and every" civil right and thereby "deprives [Plaintiffs] of even the most basic redress for the worst

16

mistreatment[.]"   Pls.' Obj. 25.   They propose a hypothetical scenario in which the statute would leave inmates unable to enforce even the guarantee that they be provided with the most basic of needs of life — food, shelter, and adequate medical care.   Id. at 28.

The Eighth Amendment states: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment."   U.S. Const. amend. VIII.   The First Circuit has instructed that "[u]ndue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment."   Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).   "[T]he Eighth Amendment is meant to prohibit 'unnecessary and wanton infliction of pain,' which is 'repugnant to the conscience of mankind.'"   Id. (quoting Estelle, 429 U.S. at 105-06).   To be successful, a claim under the Eighth Amendment must demonstrate that the punishment is "grossly disproportionate to the underlying offense."   United States v. Blodgett, 872 F.3d 66, 71-72 (1st Cir. 2017) (citation omitted).   "A finding of gross disproportionality is hen's-teeth rare[.]"   Id. at 72 (citation and quotations omitted).

The inability to bring a lawsuit for monetary compensation does not meet the Blodgett standard.   Plaintiffs' inability to sue over their respective injuries does not impose an unconscionable

17

and unnecessary infliction of pain, is not grossly disproportionate to their underlying offenses, and does not amount to cruel and unusual punishment.  The State's Motion to Dismiss with respect to Plaintiffs' claims under the Eighth Amendment is therefore GRANTED.

3.   The First Amendment and Due Process

Plaintiffs allege that the inability to pursue a state tort claim infringes on a fundamental federal right to access courts under the First Amendment and Due Process Clause of the Fourteenth Amendment.  The State contends that this claim fails as a matter of law.[7]  Mem. Supp. Mot. to Dismiss 22-26.  The Court disagrees.

In Bounds v. Smith, the United States Supreme Court stated that "[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts."  430 U.S. 817, 821 (1977); abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).  Although that access is not limitless, this right includes the ability to pursue direct appeals and habeas petitions and was extended to actions under § 1983 "to vindicate 'basic

---

[7] The State also argues that to the extent Plaintiffs contend that their tort claims constitute property interests, this claim fails as a matter of law, given that the state has broad discretion to define the limits of its tort laws (including immunity and defenses).  Mem. Supp. Mot. to Dismiss 22 ("[T]he State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." (quoting Martinez v. California, 444 U.S. 277, 282 (1980)).

constitutional rights.'"   Lewis, 518 U.S. at 354 (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)).

Some courts have extended the right of access to the courts to encompass all civil matters.   See Corpus v. Estelle, 551 F.2d 68, 70 (5th Cir. 1977) ("[R]easonable access to the courts must include access in general civil legal matters[.]").   Plaintiffs point to an older case in this district which suggested that access to courts "may extend to all civil actions."[8]   See Souza v. Travisono, 368 F. Supp. 959, 966 (D.R.I. 1973) (citation omitted); see also McCuiston v. Wanicka, 483 So. 2d 489, 491 (Fla. Dist. Ct. App. 1986) (finding, in the context of a civil death statute case, that "numerous other courts have drawn no distinction between prisoners seeking such relief as habeas corpus and those wishing to file civil actions generally" when determining whether a plaintiff was deprived of his access to courts).

As to the facts of this case, Lewis is instructive.   In Lewis, inmates of various prisons alleged that the prison had furnished them with inadequate legal research facilities, depriving them of their right of access to the courts.   518 U.S. at 346-47.   Finding

_____

[8] Plaintiffs also rely on Thompson v. Bond, 421 F. Supp. 878 (W.D. Mo. 1976), where the court struck down a statute barring a state prisoner from filing any civil action other than to challenge the constitutionality or validity of his confinement because it broadly denied the access to courts.   Id. at 881.

that there was no violation with respect to the prisoners' claims,

the Supreme Court stated:

> In other words, Bounds does not guarantee inmates the
> wherewithal to transform themselves into litigating
> engines capable of filing everything from shareholder
> derivative actions to slip-and-fall claims.  The tools
> it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or
> collaterally, and in order to challenge the conditions
> of their confinement.  Impairment of any other
> litigating capacity is simply one of the incidental (and
> perfectly constitutional) consequences of conviction and
> incarceration.

Lewis, 518 U.S. at 355 (emphasis in original); see also Riva v.

Brasseur, Case No. 15-2554, 2016 WL 9650983, at *1 (1st Cir. Sept.

12, 2016) (citing Lewis, 518 U.S. at 355, and stating, "[t]he right

of access to the courts, in the context of prisoners, is addressed

only to a prisoner's right to attack his conviction and his right

to challenge the conditions of his confinement.").

Plaintiffs' allegations here directly relate to the

conditions of their confinement – to the safety of their physical

environment and adequacy of the medical care they receive while

incarcerated, all of which are controlled by the State.  Taking

the facts alleged as true, the Civil Death Act inhibits Plaintiffs'

constitutional right of access to the courts to address the alleged

harms they have suffered while confined.  The State has failed to

show how Plaintiffs could otherwise challenge the conditions of

their confinement if the Civil Death Act is applied to them.  This

suggests that Plaintiffs have no other recourse.  The State's

20

Motion to Dismiss with respect to the First Amendment and Due
Process Clause is DENIED.

      4.   The Equal Protection Clause

Finally, there is Plaintiffs' claim that the Civil Death Act
violates the Equal Protection Clause.  "The equal protection
guarantee of the Fourteenth Amendment prohibits the state from
'deny[ing] any person within its jurisdiction the equal protection
of the laws.'" Pagan v. Calderon, 448 F.3d 16, 34 (1st Cir. 2006)
(quoting U.S. Const. amend. XIV, § 1).  So, while "all persons
similarly situated should be treated alike[,]" id., "[t]o state an
equal protection claim, a plaintiff must adequately plead that the
government treated the plaintiff disparately as compared to
similarly situated persons and that such disparate treatment
either burdens a fundamental right, targets a suspect class, or
has no rational basis." Ctr. for Bio-Ethical Reform, Inc. v.
Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation
marks and citation omitted).  The Supreme Court has "long held
that 'a classification neither involving fundamental rights nor
proceeding along suspect lines . . . cannot run afoul of the Equal
Protection Clause if there is a rational relationship between the
disparity of treatment and some legitimate governmental purpose.'"
Armour v. City of Indianapolis, Ind., 566 U.S. 673, 680 (2012)
(quoting Heller v. Doe, 509 U.S. 312, 319-320 (1993)).  A
classification that infringes on a fundamental right or targets a

suspect class must meet strict scrutiny, "requiring the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." Westenfelder v. Ferguson, 998 F. Supp. 146, 151 (D.R.I. 1998) (quoting Plyler v. Doe, 457 U.S. 202, 217 (1982)).

The first step in this analysis is determining whether Plaintiffs are treated differently than others who are similarly situated to them "in all relevant respects[.]" Barrington Cove Ltd. P'ship v. R.I. Housing and Mortg. Finance Corp., 246 F.3d 1, 10 (1st Cir. 2001). As two individuals sentenced to life without parole at the ACI, Plaintiffs are treated disparately from other inmates serving equivalent life sentences (i.e., a sentence of a term of years expected to expire beyond the inmate's life expectancy), as well as from inmates with life sentences housed out of state or at a federal facility because, under the Civil Death Act, they are prohibited from asserting civil actions whereas the others are not. While it is true that a life sentence without parole is the harshest sentence available under Rhode Island law, a person sentenced to a hypothetical ninety years of incarceration suffers a similarly harsh sentence, with similar penological motives. The difference in how a sentence is characterized is typically determined by the statutory language involved. See, e.g., R.I. Gen. Laws § 11-23-2 ("Every person guilty of murder in the first degree shall be imprisoned for life . . . Every person

guilty of murder in the second degree shall be imprisoned for not less than ten (10) years and may be imprisoned for life."). But while these sentences may be characterized differently, the government's penological motives are effectively the same when a person receives a de facto life sentence through a lengthy term of years as he does in receiving a life sentence: keeping that person incarcerated for the rest of his life and deterring others from engaging in similar heinous acts through the imposition of these lengthy sentences. And yet Plaintiffs are treated differently from a person sentenced to an extremely long term of years by virtue of this statute. Moreover, Plaintiffs are also treated differently from individuals serving life sentences housed at other facilities because the statute explicitly targets those persons "imprisoned in the adult correctional institutions for life." R.I. Gen. Laws § 13-6-1. Plaintiffs are sufficiently similarly situated to these two groups of inmates to meet the first step in the equal protection analysis.

The next question is whether this disparate treatment burdens a fundamental right. As described above, the Supreme Court held in Bounds that "prisoners have a constitutional right of access to the courts." 430 U.S. at 821; see Lewis, 518 U.S. at 350 (analyzing Bounds). This access includes the ability to attack one's sentence "directly or collaterally" and the ability "to challenge the conditions of [one's] confinement[.]" Lewis, 518 U.S. at 355; see

23

also Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) ("Of fundamental import to prisoners are their First Amendment right[s] to file prison grievances . . . and to pursue civil rights litigation in the courts. . . . Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." (quotations and citations omitted)). Plaintiffs' inability to assert civil actions by virtue of this statute burdens their fundamental right of access to the courts because they are unable to challenge the conditions of their confinement, namely, the physical harm they allegedly suffered while confined.

The final question is, notwithstanding the burden on Plaintiffs' fundamental rights, whether the State has shown that the restrictions imposed are, as a matter of law, narrowly tailored measures that further compelling government interests. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995). As pled, it is difficult to see how preventing a prisoner from bringing a suit over the physical harm he suffered while confined is narrowly tailored to advance a compelling governmental interest. Of course, as the State argues, the government has an interest in punishing those who commit heinous crimes, especially ones that garner lifetime sentences, and deterring future criminal activity by others. The State does not argue that the Civil Death Act survives strict scrutiny, but rather that, under rational basis

review, the wholesale restriction of these rights is proportionally justified by the heinous nature of the crimes committed. See Mem. Supp. Mot. to Dismiss 29-30.

In this vein, the Supreme Court has recognized that some fundamental constitutional rights may be "impinge[d]" for prisoners as long as the restriction is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). For example, the right to marriage may be infringed. Johnson v. Rockefeller, 365 F. Supp. 377, 380 (S.D.N.Y. 1973) ("Insofar as the deprivation of the right to participate in the ceremony of marriage can be considered as imposing punishment in addition to incarceration it is a penalty which is well within New York's power to prescribe."), aff'd Butler v. Wilson, 415 U.S. 953 (1974). Relying on Turner, Judge Lisi of this Court determined in Ferreira v. Wall that the Civil Death Act did not violate the equal protection clause in the context of marriage, notwithstanding the fact that it denied plaintiff a fundamental right. No. 15-219-ML, 2016 WL 8235110, at *3-5 (D.R.I. Oct. 26, 2016). But while certain rights like marriage may be infringed, neither the Supreme Court, nor any Court of Appeals, have so restrained an inmate's fundamental right to access the courts or challenge the conditions of his confinement. The State's assertion that these inmates' crimes are more heinous and therefore require more restrictions of their rights falls short of the narrow tailoring required,

particularly when an inmate could end up suffering serious physical harm and have no avenue to seek redress.  For these reasons, the Amended Complaint adequately alleges a violation of the Equal Protection Clause and, for now, survives.  The State's Motion to Dismiss with respect to the Equal Protection Clause is DENIED.[9]

     5.    42 U.S.C. § 1983

Plaintiffs have also adequately stated a claim that the Civil Death Act is unconstitutional insofar as it bars Plaintiffs from proceeding with claims under 42 U.S.C. § 1983 in state court.  As noted above, after holding that "the Legislature has unambiguously mandated that persons serving a life sentence are prohibited from asserting civil actions[,]" the RISC in Gallop I commented in dicta that "plaintiff ha[d] failed to produce any authority that holds that a state court is bound to hear a § 1983 action where [the RISC] has deemed the party to be civilly dead."  182 A.3d at 1144. A claim under 42 U.S.C. § 1983 functions in tandem with the rights

---

[9] The Court need not address in detail whether this classification of inmates reaches the level of a "suspect class." Suffice to say that a classification based on sentence likely is not the kind of inherent characteristic that the Supreme Court conceived of when it described suspect classes of being those based on "race, alienage, or national origin."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985).  Plaintiffs are subject to the Civil Death Act because of their actions, not because of innate traits.  See Michael H. v. Gerald D., 491 U.S. 110, 131 (1989) (plurality) (rejecting argument that status of being an illegitimate child is a class entitled to strict scrutiny because "[i]llegitimacy is a legal construct, not a natural trait").

described above, as "Section 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002) (quoting 42 U.S.C. § 1983).  Because the statute bars Plaintiffs from filing any and all civil actions, including constitutional claims, a fortiori the statute unconstitutionally operates to bar such claims under 42 U.S.C. § 1983.  The State's Motion to Dismiss with respect to 42 U.S.C. § 1983 is DENIED.

C.   Abstention

As an alternative to its Motion to Dismiss, the State asks that this Court abstain from ruling under the Pullman abstention doctrine because a decision by this Court would touch on undecided questions of state law currently pending before the Rhode Island Supreme Court in Zab II and Rivera.  Mem. Supp. Mot. to Dismiss 37.

Abstention is "'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it,' and should be invoked only in 'exceptional circumstances.'"  Southern Union Co. v. Lynch, 321 F. Supp. 2d 328, 335 (D.R.I. 2004) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)).  The cases calling "most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the

meaning of which is unclear under state law." _Ford Motor Co. v. Meredith Motor Co., Inc._, 257 F.3d 67, 71 (1st Cir. 2001) (quoting _Harris Cty. Comm'rs Ct. v. Moore_, 420 U.S. 77, 84 (1974)).  Under the principle originally described in _Railroad Comm'n v. Pullman Co._, 312 U.S. 496 (1941), "a federal court confronted with such circumstances 'should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.'" _Ford Motor Co._, 257 F.3d at 71 (quoting _Harris Cty._, 420 U.S. at 84).  In _Ford Motor Co._, the First Circuit articulated four factors to consider: (1) "whether there is substantial uncertainty over the meaning of the state law at issue"; (2) "whether a state court's clarification of the law would obviate the need for a federal constitutional ruling"; (3) whether "there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim"; and (4) whether "federalism concerns support[] abstention."  257 F.3d at 71-73 (citations and quotations omitted).

As to the first and second factors, and as discussed in detail above, there is no "substantial uncertainty" over the meaning of the Civil Death Act, and no further clarification is needed.

As to the third and fourth factors, while it is true that similar issues are being litigated in state court, the RISC has clearly spoken with respect to the statute's meaning, and those

28

holdings are followed by the trial justices.  There is no reason to believe that declining to abstain here will lead to "'needless friction' between the federal and state proceedings[.]"  Rather, as in Southern Union, abstention is only likely to lead to a second cycle of litigation in state court, with the Plaintiffs returning to this Court once again.  See 321 F. Supp. 2d at 336-37 (citing Cuesnongle v. Ramos, 835 F.2d 1486, 1499 (1st Cir. 1987) ("[B]ecause of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in special circumstances." (quotations and citation omitted)).  This is not a special circumstance that requires abstention.

V.   Conclusion

For the reasons stated herein, the State's Motion is GRANTED in part, and DENIED in part.

IT IS SO ORDERED.

_____

William E. Smith
District Judge
Date: March 29, 2021